**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

EDWARD SI and STUDENTS FOR A
NATIONAL HEALTH PROGRAM AT
EASTERN VIRGINIA MEDICAL
SCHOOL,

     *Plaintiffs,*

      v.

ALFRED ABUHAMAD, in his official
capacity as President and Provost and Dean
of the School of Medicine of Eastern
Virginia Medical School;

SARAH M. BISHOP, ROBERT J.
BIANCHI, BETTY B. BIBBINS, CHESTER
M. HART, JR., W. ASHTON LEWIS, SR.,
T. RICHARD LITTON, JR., LISA S.
CHANDLER, and GUY R. FRIDELL, III,
each in their official capacities as Members
of the Board of Visitors at Eastern Virginia
Medical School;

BRUCE WALDHOLTZ, PHILLIP H.
HUCLES, NAVED A. JAFRI, BLYTHE A.
SCOTT, PAUL D. FRAIM, and SHARON
GOODWYN, each in their individual and
official capacities as Members of the Board
of Visitors and Members of the Academic
and Student Affairs Committee at Eastern
Virginia Medical School;

SHANNON MORRIS, in her individual and
official capacity as a Member of the
Academic and Student Affairs Committee at
Eastern Virginia Medical School;

MARCUS L. MARTIN, and FRED

Civil Action No.: _____

**COMPLAINT FOR CIVIL RIGHTS**
**VIOLATIONS**

**JURY TRIAL DEMANDED**

LINDSAY, in their individual capacities;
STACY R. PURCELL, in her individual and
official capacity as Vice President and
General Counsel of Eastern Virginia Medical
School; and

ALLISON KNIGHT, in her individual and
official capacity as Assistant Vice Dean of
Student Affairs of Eastern Virginia Medical
School.

---

## INTRODUCTION

1.      As the Supreme Court held nearly fifty years ago, a public university violates the First Amendment when it refuses to approve a student group because of the group's viewpoint. *Healy v. James*, 408 U.S. 169, 187–188 (1972). But that is exactly what Eastern Virginia Medical School has done to student Edward Si and his proposed chapter of Students for a National Health Program.

2.      Si and his fellow medical students wanted to start a chapter of a national student organization that advocates for a single-payer health care system. Student clubs that are officially recognized by Eastern Virginia Medical School (EVMS) through its Student Government Association (SGA) receive significant benefits, including funding, and the use of the school's facilities, name, and official branding. Si therefore applied for recognition of Students for a National Health Program at Eastern Virginia Medical School (SNaHP).

3.      But the SGA denied SNaHP's application, telling Si that "SGA does not want to create clubs based on opinions, political or otherwise, and the mission and goals of your club do not describe what we believe to be necessary or sustainable for a club." The SGA did not claim

that SNaHP had failed to meet any procedural requirements, or that its application was deficient in any way. SNaHP's sole and fatal flaw was that its members sought to express their opinion.

4.  Notably, the SGA has recognized other clubs that express opinions and promote causes, including a Christian fellowship group, a pro-choice group, and a group that promotes consciousness of social inequality in medicine. Si spent months trying to persuade EVMS administrators to reverse the SGA's unconstitutional viewpoint discrimination, to no avail.

5.  Plaintiffs Edward Si and SNaHP now bring this civil rights lawsuit seeking declaratory and injunctive relief, damages, and attorneys' fees to vindicate their rights under the First and Fourteenth Amendments. Defendants have permitted the SGA to deny recognition to any club that they subjectively decide "is inconsistent with the rules, ideals, goals or objectives" of EVMS. By allowing the SGA to use its unfettered discretion to discriminate based on viewpoint, Defendants violated the First Amendment. *Bd. of Regents of the Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 235 (2000).  Defendants' vague and overly broad policy grants unfettered discretion to deny students access to school resources available to others, in violation of Plaintiffs' Fourteenth Amendment right to due process of law.

6.  The law is well-settled: "When a university requires its students to pay fees to support the extracurricular speech of other students, all in the interest of open discussion, it may not prefer some viewpoints to others." *Southworth*, 529 U.S. at 233; *Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819, 836 (1995); *Widmar v. Vincent*, 454 U.S. 263, 277 (1981). In light of this longstanding precedent, no reasonable public university administrator would allow students to be denied their First Amendment right to join together with others of like mind. But despite Si's repeated requests for help, EVMS and its administrators refused to reverse the SGA's viewpoint discrimination—and violated Si and SNaHP's constitutional rights.

**JURISDICTION**

7.      This action raises federal questions under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Plaintiffs seek declaratory and injunctive relief compelling Defendants to recognize SNaHP as an official student club at EVMS, as well as damages for violations of their rights to free speech and free association.

8.      Accordingly, this Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

**VENUE**

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and Local Civil Rule 3(C) because a substantial part of the events giving rise to Plaintiffs' claims occurred in Norfolk, Virginia, which is located in the Norfolk Division of the Eastern District of Virginia.

**THE PARTIES**

**Plaintiffs**

10.      Plaintiff Edward Si is a citizen of the United States and a resident of Norfolk, Virginia. In the fall of 2020, Si entered his first year as a student at EVMS in the Doctor of Medicine program. He will continue his education as a second-year student in the fall of 2021. At all times relevant to the Complaint, Si has been a student at EVMS in Norfolk, Virginia.

11.      Plaintiff SNaHP is a proposed chapter of Students for a National Health Program, a student branch of the national advocacy group Physicians for a National Health Program. Both SNaHP and its parent organization "advocate for universal, comprehensive single-payer national

4

health insurance in the United States of America." SNaHP's purpose is to educate students and others about both our current health care system and a single-payer health care system and to advocate for the benefits of the latter. There are over 100 chapters of SNaHP at medical schools in the United States, meaning there are chapters of the organization at a majority of academic institutions accredited to award a Doctor of Medicine degree.

**Defendants**

12.     Defendant Alfred Abuhamad is the President and Provost, and the Dean of the School of Medicine of EVMS, and is responsible for the operations of EVMS, including implementing and enforcing the policies and procedures that resulted in the deprivation of Plaintiffs' constitutional rights. He was appointed as President and Provost on August 4, 2021. He is sued in his official capacity.

13.     Defendants Sarah M. Bishop, Robert J. Bianchi, Betty B. Bibbins, Chester M. Hart, Jr., W. Ashton Lewis, Sr., T. Richard Litton, Jr., Lisa S. Chandler, and Guy R. Fridell, III, are members of the Board of Visitors for EVMS, and are responsible for generally directing the affairs of EVMS, including approving and implementing the policies and procedures that resulted in the deprivation of Plaintiffs' constitutional rights. Va. Code Ann. § 23.1-3003. They are sued in their official capacity.

14.     Defendants Bruce Waldholtz, Phillip H. Hucles, Naved A. Jafri, Marcus L. Martin, Blythe A. Scott, Paul D. Fraim, Sharon Goodwyn, and Fred Lindsay are members of the Board of Visitors for EVMS, and are responsible for generally directing the affairs of EVMS, including approving and implementing the policies and procedures that resulted in the deprivation of Plaintiffs' constitutional rights. Va. Code Ann. § 23.1-3003. They are also members of EVMS's Academic and Student Affairs Committee. In that capacity, they are

responsible for "reviewing and overseeing matters relating to student government, appropriate student participation in EVMS governance, and student organizations and extracurricular activities[,]" including approving the policies and ratifying the actions of the SGA that resulted in the deprivation of Plaintiffs' constitutional rights. *Bd. of Visitors Bylaws*, EVMS, pg. 5, Art. IV § 3 (Dec. 10, 2019). They are sued in both their individual and official capacities.

15.    Defendant Shannon Morris is a member of EVMS's Academic and Student Affairs Committee. In that capacity, she is responsible for "reviewing and overseeing matters relating to student government, appropriate student participation in EVMS governance, and student organizations and extracurricular activities[,]" including approving the policies and ratifying the actions of the SGA that resulted in the deprivation of Plaintiffs' constitutional rights. *Bd. of Visitors Bylaws*, EVMS, pg. 5, Art. III § 1n (Dec. 10, 2019). She is sued in both her individual and official capacities.

16.    Defendants Marcus L. Martin and Fred Lindsay were, at all times relevant to this complaint, members of Medical School's Board of Visitors and the Academic and Student Affairs Committee. In their capacity as Committee members, they were responsible for "reviewing and overseeing matters relating to student government, appropriate student participation in EVMS governance, and student organizations and extracurricular activities[,]" including approving the policies and ratifying the actions of the SGA that resulted in the deprivation of Plaintiffs' constitutional rights. *Bd. of Visitors Bylaws*, EVMS, pg. 5, Art. III § 1n (Dec. 10, 2019). They are no longer members of the Board of Visitors or the Academic and Student Affairs Committee, and are sued in their individual capacity only.

17.    Defendant Stacy R. Purcell is the Vice President and General Counsel for EVMS, and is responsible for activities assigned by the President and Provost. *Bd. of Visitors Bylaws*,

EVMS, pg. 5, Art. III § 2 (Dec. 10, 2019). As described below, she ratified the actions of the SGA that deprived Plaintiffs of their constitutional rights. She is sued in both her individual and official capacities.

18.     Defendant Allison Knight is the Assistant Vice Dean of Student Affairs for EVMS, and is responsible for activities assigned by the President and Provost. *Bd. of Visitors Bylaws*, EVMS, pg. 5, Art. III § 2 (Dec. 10, 2019). As described below, she ratified the actions of the SGA that deprived Plaintiffs of their constitutional rights. She is sued in both her individual and official capacities.

19.     At all relevant times, Defendants were acting under the color of state law.

## FACTUAL ALLEGATIONS

*Overview of Student Club Recognition at EVMS*

20.     EVMS is a public medical school under the laws of the Commonwealth of Virginia under Va. Code Ann. § 23.1-3001 ("Eastern Virginia Medical School is established as a public instrumentality, public body politic and corporate, and political subdivision of the Commonwealth.").

21.     The Board of Visitors is the governing body of EVMS, and empowered by statute to generally direct the affairs of EVMS. Va. Code Ann. § 23.1-3002–3003.

22.     The Board of Visitors has imbued EVMS's President and Provost, currently Defendant Alfred Abuhamad, with the power and duty to oversee all academic and student affairs. *Bd. of Visitors Bylaws*, EVMS, pg. 5, Art. III § 1n (Dec. 10, 2019).

23.     The Board of Visitors has established a standing committee for Academic and Student Affairs, which is responsible for, among other things, "reviewing policies governing

students, including the admission and retention of students and student rights, responsibilities, conduct, and discipline," and "reviewing and overseeing matters relating to student government, appropriate student participation in EVMS governance, and student organizations and extracurricular activities." *Id* at pg. 7, Art. IV § 3. The committee is composed of the Rector for the Board of Visitors (or a designee), Board members, one faculty member recommended by the EVMS Faculty Senate, and two non-voting student representatives. *Id*.

24.     EVMS collects an annual SGA fee of $30 from each enrolled medical student. According to the Office of Financial Services, this fee covers student events, community service projects, and club activities as designated by the student council.

25.     The SGA Constitution establishes a Clubs and Student Organizations Subcommittee and grants that body the discretion to distribute the funds that have been allocated by EVMS to the SGA. A true and correct copy of the SGA Constitution is attached as Exhibit A.

26.     The SGA Constitution defines a "club" or a "student organization" as "any group of students enrolled at EVMS which has organized for a common purpose and plans to represent itself as being associated with EVMS."

27.     Per the SGA Constitution: "All clubs and student organizations will receive their final approval through the Clubs and Student Organizations Subcommittee. Additionally, the Clubs and Student Organizations Subcommittee will be the final authority in the amount of money that is distributed to all EVMS clubs and student organizations. The Student-Body Vice President will then report to the Student Government Association which clubs and student organizations were granted approval and which clubs and student organizations were denied (and an explanation as to why the club or student organization was denied)."

28.     According to the SGA Constitution, "[a]ll clubs and student organizations must be approved and chartered by the EVMS Student Government Association Clubs and Student Organizations Subcommittee in order to receive recognition from the Office of Student Affairs."

29.     The SGA Constitution also provides that approval by the SGA Clubs and Student Organizations Subcommittee confers the following benefits:

(a)     Use of EVMS facilities for activities or functions sponsored by the club;

(b)     Use of the name "Eastern Virginia Medical School" in conjunction with the club's activities; and

(c)     Access to any institutional or SGA-maintained sources of funding including the Student Fund, disbursements from the Office of Student Affairs, and SGA grants.

30.     Additionally, the SGA website advertises that officially recognized clubs can:

(a)     apply to the SGA for a grant of up to $250 to further the club's mission;

(b)     apply for loans from SGA to assist with funding while awaiting processing of student fees;

(c)     host events that are officially affiliated with EVMS's branding;

(d)     reserve rooms for events at the school; and

(e)     hold fundraisers.

31.     To apply for official recognition, proposed student clubs must provide the following to the Clubs and Student Organizations Subcommittee:

(a)     A copy of the club's mission statement and description;

(b)     A current and accurate list of the club's officers and members;

(c)     A list of the club's planned activities;

     (d)    A projected budget of the club; and

     (e)    A completed new club application.

32.    Pursuant to the SGA Constitution, "[a]ny EVMS student may submit an application for consideration by the Clubs and Student Organizations Subcommittee. Upon submission, review and approval of the completed application, the Student Government Association shall charter the applicant club or student organization."

33.    However, the SGA Constitution also provides that the Clubs and Student Organizations Subcommittee may deny recognition "to any proposed club or student organization or deny any current club or student organization the right to carry out an activity or function should the subcommittee deem that the activity or function in question is inconsistent with the rules, ideals, goals or objectives of EVMS."

***The SGA Denies Si's Application for Recognition of SNaHP.***

34.    In the Fall of 2020, during Si's first semester in medical school, he learned about Physicians for a National Health Program, a national organization of doctors that advocate for single-payer health care. Si joined the national student branch of the organization, and decided to start a SNaHP chapter at EVMS.

35.    In order to attract potential members, Si invited a representative of Physicians for a National Health Program to come speak on campus, at a school-approved event on November 30, 2020. After the event, Si heard from 20 students who were interested in joining a SNaHP chapter at EVMS.

36.    On December 2, 2020, Si submitted an application to EVMS's SGA for recognition of SNaHP on campus.

37.    Si's application fulfilled all procedural requirements and criteria for recognition.

38.    Si's application included a copy of the club's mission statement and club description; a current and accurate list of the club's officers and members; a list of the club's planned activities; a projected budget of the club; and a completed new club application.

39.    Si included the following mission statement for the proposed chapter of SNaHP in his proposed constitution: "The mission of this organization shall be to advocate for universal, comprehensive single-payer national health insurance in the United States of America. This will be achieved by educating the next generation of physicians and health care providers at EVMS about facets of the current American health care system and the necessary reforms to make quality, cost-effective health care accessible to all Americans."

40.    On December 2, 2020, Si uploaded a copy of SNaHP's proposed constitution to the SGA's new student organizations Google Drive folder, per the SGA's instructions.

41.    On January 7, 2020, Riley M. Suter, Vice President of the SGA and chair of the Clubs and Student Organizations Subcommittee, sent Si an email advising him that the subcommittee had voted to deny SNaHP's club application.

42.    Suter's email explained why SNaHP's application had been denied: "Students are free to discuss or advocate for whatever they feel, whenever they feel, without needing to specifically organize a club with leaders, a constitution, etc. And students are free to request speakers for their class without being part of a club. SGA does not want to create clubs based on opinions, political or otherwise, and the mission and goals of your club do not describe what we believe to be necessary or sustainable for a club."

43.    Suter's email did not claim that SNaHP had failed to fulfill any of the procedural requirements for applying or indicate that SNaHP's application was otherwise insufficient in any way.

44.     Contrary to the stated reason in Suter's email for denying SNaHP's application, there were, at that time, at least three student clubs "based on opinions, political or otherwise" at EVMS:

(a)     Christian Medical and Dental Association, a club whose stated mission is "to glorify God -- by motivating, educating and equipping Christian doctors and students: to serve with professional excellence as witnesses of Christ's love and compassion, and by advancing biblical principles of healthcare within the Church and to our culture."

(b)     Medical Students for Choice, a club whose stated mission is "to increase education, awareness, and open discussion regarding issues of reproductive health and to support those within the medical community who are working to ensure the availability of all reproductive health care services;" and

(c)     Student National Medical Association, a club whose stated mission is "to support current and future underrepresented minority medical students while addressing the needs of underserved communities, and increasing the number of clinically excellent, culturally competent and socially conscious physicians."

***EVMS's Administration Is Notified That Denying Recognition Based on SNaHP's Views Is Impermissible Under the First Amendment.***

45.     On February 2, 2021, the Foundation for Individual Rights in Education (FIRE) sent a letter via email to then-President and Provost Richard V. Homan, advising him that EVMS was engaging in unconstitutional viewpoint discrimination in violation of the First Amendment by denying SNaHP's application for the reasons stated by the SGA.

46.     The letter to President Homan quoted, directly from Suter's January 7, 2020 email, the reason why the Student Organizations Subcommittee rejected the proposed SNaHP chapter, and made clear that, as a state actor, EVMS is bound by the First Amendment.

47.     On February 17, 2021, Vice President and General Counsel Purcell replied to FIRE's February 2 letter on behalf of the administration.

48.     Vice President and General Counsel Purcell responded that the proposed club was "not denied in any way based on viewpoint or to infringe on free speech or freedom of association," and that the SGA "found that there was an incompleteness of ideas, goals, and sustainability measures, matters that are considered for every application. The proposed student group also failed to submit a constitution in accordance with the standards."

49.     On information and belief, Vice President and General Counsel Purcell's claim regarding SNaHP's "incompleteness of ideas, goals, and sustainability measures" is inconsistent with conclusions that must necessarily underlie the Medical School's grants of recognition to other "opinion"-based organizations.

50.     Vice President and General Counsel Purcell's statement that SNaHP had failed to submit a constitution was incorrect because Si had submitted all necessary documents, including a constitution.

51.     Purcell further replied that SNaHP "was invited to reapply" and that the organization "may do so at any time." Si was unaware of anyone at EVMS having previously extended such an invitation.

52.     On March 1, 2021, Si emailed a letter to Vice President and General Counsel Purcell on behalf of SNaHP, expressing concern at the administration's erroneous belief that the club had been denied recognition based on insufficiencies in its application, as opposed to the reasons explicitly and exclusively stated by Suter.

53.     Later that same day Si received a brief email response from Vice President Purcell: "Please contact Dr. Allison Knight for assistance."  Vice President Purcell copied Knight, who is the Vice Dean of Student Affairs at EVMS, on the email.

***Plaintiffs Reapply for Recognition as EVMS Continues to Ignore Viewpoint Discrimination.***

54.     On March 8, 2021, Si reapplied for SNaHP's recognition as a student club at EVMS, and resubmitted the SNaHP constitution to the SGA's Google Drive folder.

55.     On March 15, 2021, FIRE sent a second letter to EVMS, directed to Vice President and General Counsel Purcell, pointing out the inconsistencies contained in her February 17 response to FIRE's initial letter, and advising her that SNaHP had reapplied for recognition by the SGA. FIRE also reminded her that EVMS is required to remain viewpoint neutral in evaluating SNaHP's application.

56.     Neither Vice President and General Counsel Purcell nor anyone else in EVMS's administration responded to FIRE's second letter.

57.     On March 30, 2021, Si emailed SGA Vice President Suter to ask him when the Clubs and Student Organizations Subcommittee would meet in order to discuss SNaHP's reapplication.

58.     Suter sent a response that same day, telling Si that the next review of club applications would "likely be done by the next SGA board"—meaning SNaHP would have to wait until the fall 2021 semester to have its new application considered.

59.     On April 26, 2021, Si emailed a letter to Assistant Vice Dean of Student Affairs Allison Knight asking her to overrule the SGA's decision and to officially recognize SNaHP as a student club.

60.     Later that same day, Dean Knight replied to Si's email indicating that she would, with Si's permission, talk to the SGA to discuss an appeal of their decision. Si agreed.

61.     On April 28, 2021, Dean Knight wrote Si back, advising him that the SGA had indicated to her that they would not consider club applications after October of any given academic year.

62.     Someone with access to the SGA website updated the site's "Club Resources" page to include an October deadline for club applications *after* Si's initial application was submitted.

63.     As recently as January 25, 2021, the October deadline for club applications was not in place.

64.     On May 4, 2021, Si wrote Dean Knight back, advising her of his previous communications with Vice President and General Counsel Purcell, and informing her that the October deadline for club applications had not existed when he applied for SNaHP's recognition, nor was it the reason cited by Suter for the denial of his application.

65.     On May 5, 2021, Knight responded, indicating she had not previously seen any of the communications between Si and Suter, Si and Vice President Purcell, or FIRE and EVMS.

66.     Knight offered to meet with Si virtually to discuss his concerns, but Si declined the invitation, electing to keep their conversations to email.

67.     On May 12, 2021, Knight emailed Si for the final time advising him he could reapply when the SGA resumes approving clubs in the fall.

68.     EVMS continues to discriminate against Plaintiffs based on their viewpoint, and SNaHP remains unrecognized.

## INJURY TO PLAINTIFFS

69.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

70.     Defendants' conduct has caused Plaintiffs irreparable harm by violating their First Amendment rights to free expression and free association at EVMS.

71.     Defendants' conduct has caused Plaintiffs injury by denying them access to school resources for more than eight (8) months.

72.     Defendants' conduct is ongoing and continues to cause Plaintiffs injury by denying them access to school resources, which impairs their ability to exercise their First Amendment rights of free expression and free association by excluding them from using avenues of communication and promotion available to other student clubs at EVMS.

73.     As a direct and proximate cause of Defendants' actions, Plaintiffs have been denied the use of EVMS's facilities for activities or functions.

74.     As a direct and proximate cause of Defendants' actions, Plaintiffs have been denied use of the name "Eastern Virginia Medical School" in conjunction with their activities.

75.     As a direct and proximate cause of Defendants' actions, Plaintiffs have been denied access to any institutional or SGA-maintained sources of funding including the Student Fund, disbursements from the Office of Student Affairs, and SGA grants and loans.

76.     As a direct and proximate result of Defendants' policies, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional rights to free expression and association.

**FIRST CAUSE OF ACTION**
**Facial Vagueness Challenge to the SGA Constitution**
**(Against All Official-Capacity Defendants)**

77.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

78.     A regulation violates the Due Process Clause of the Fourteenth Amendment for vagueness if a person of ordinary intelligence cannot distinguish between permissible and prohibited conduct. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

79.     Under the SGA Constitution, the Clubs and Student Organizations Subcommittee may deny recognition "to any proposed club or student organization … should the subcommittee deem that the activity or function in question is inconsistent with the rules, ideals, goals or objectives of EVMS." *SGA Constitution*, EVMS, pg. 7, § 5(D).

80.     The provision contained in Section 5, Subsection D, of the SGA Constitution, is unconstitutional on its face because it is so vague that it authorizes arbitrary and discriminatory application, and fails to provide people of ordinary intelligence a reasonable opportunity to understand the criteria for recognition.

81.     The Clubs and Student Organizations Subcommittee utilized Section 5, Subsection D, of the SGA Constitution in order to deny Plaintiffs' application for recognition based on viewpoint discrimination.

82.     As a direct and proximate result of Defendants' approval and implementation of these policies, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional rights to free expression and association.

83.     The denial of constitutional rights is an irreparable injury *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

84.     Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their First Amendment rights.

85.     Without declaratory and injunctive relief from this Court, Defendants' unconstitutional actions will continue and Plaintiffs will suffer irreparable harm indefinitely.

**SECOND CAUSE OF ACTION**
**Facial Overbreadth Challenge to the SGA Constitution**
**(Against All Official-Capacity Defendants)**

86.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

87.     A regulation violates the First Amendment for overbreadth if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotations and citations omitted).

88.     Under the SGA Constitution, the Clubs and Student Organizations Subcommittee may deny recognition "to any proposed club or student organization … should the subcommittee deem that the activity or function in question is inconsistent with the rules, ideals, goals or objectives of EVMS." *SGA Constitution*, EVMS, pg. 7, § 5(D).

89.     The provision contained in Section 5, Subsection D, of the SGA Constitution, is unconstitutional on its face because it grants the Clubs and Student Organizations Subcommittee discretion to suppress students' constitutionally protected conduct and results in a substantial number of unconstitutional applications.

90.     The Clubs and Student Organizations Subcommittee utilized Section 5, Subsection D, of the SGA Constitution in order to deny Plaintiffs' application for recognition based on viewpoint discrimination.

91.     As a direct and proximate result of Defendants' policies, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional rights to free expression and association.

92.     The denial of constitutional rights is an irreparable injury *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

93.     Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to its First Amendment rights.

94.     Without declaratory and injunctive relief from this Court, Defendants' unconstitutional actions will continue and Plaintiffs will suffer irreparable harm indefinitely.

**THIRD CAUSE OF ACTION**
**Violation of Plaintiffs' First Amendment Rights**
**(Against All Official-Capacity Defendants)**

95.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

96.     "Viewpoint discrimination is … an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

97.     By denying SNaHP's club application because the club expressed an "opinion," Defendants discriminated on the basis of viewpoint and deprived Plaintiffs of their ability to express their ideas freely on issues of political, social, and cultural significance at EVMS.

98.     The school cannot avoid its constitutional obligation to remain viewpoint neutral by delegating the authority to students to grant or deny access to school resources to student clubs. *Bd. of Regents of the Univ. of Wis. Sys. v. Southworth,* 529 U.S. 217, 221, 235 (2000).

99.     As a direct and proximate result of Defendants' policies, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional rights to free expression and association.

100.    The denial of constitutional rights is an irreparable injury *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

101.    Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his First Amendment rights.

102.    As a direct and proximate result of Defendants' actions as described above, Plaintiffs were deprived of their constitutional rights. As a legal consequence of Defendants' violation of Plaintiffs' First Amendment rights, which are irreparable injuries *per se*, Plaintiffs are entitled to declaratory and injunctive relief, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION
### Violation of Plaintiffs' First Amendment Rights
### (Against All Individual-Capacity Defendants)

103.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

104.    "When a university requires its students to pay fees to support the extracurricular speech of other students, all in the interest of open discussion, it may not prefer some viewpoints to others." *Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 233 (2000).

105.    By denying SNaHP's club application because the club expressed an "opinion" it did not find "necessary" Defendants discriminated on the basis of viewpoint and deprived Plaintiffs of their ability to associate with one another for the common good and express their ideas freely on issues of political, social, and cultural significance at EVMS.

106.    The members of the Board of Visitors Student and Academic Affairs Committee, in their roles as reviewers and overseers of matters relating to student government and student clubs, knew or should have known that the SGA denied recognition to a proposed student club because of its viewpoint, and that the provision contained in Section 5, Subsection D, of the SGA Constitution empowered them to do so.

107.    Vice President and General Counsel Purcell responded on behalf of EVMS Administration to Plaintiffs' allegations of unconstitutional viewpoint discrimination.

108.    FIRE first advised Vice President and General Counsel Purcell, on February 2, 2021, that the SGA denied Plaintiffs' application for recognition because its mission expressed an "opinion."

109.    Plaintiff Si advised Vice President and General Counsel Purcell, on March 1, 2021, that the SGA had alleged no deficiencies in Plaintiffs' application for recognition, other than the fact that its mission expressed an "opinion."

110.    FIRE again advised Vice President and General Counsel Purcell, on March 15, 2021, that Plaintiffs' constitutional rights were still being violated.

111.    Despite knowledge of the rights violation and multiple opportunities to investigate and rectify the harm done to Plaintiffs, Vice President and General Counsel Purcell has failed, in the six months since she was first notified of the denial of Plaintiff's application for recognition, to take any action to protect Plaintiffs' constitutional rights.

112.    Vice Dean of Student Affairs Knight responded to Plaintiff Si's April 26, 2021 request that she take action to ensure the SGA would grant Plaintiffs' application for recognition.

113.    Plaintiff Si advised Vice Dean of Student Affairs Knight of his previous communications with the SGA and with Vice President and General Counsel Purcell, and of FIRE's letters to EVMS administration, all of which demonstrated the ongoing violations of Plaintiffs' constitutional rights.

114.    Despite knowledge of the rights violation and multiple opportunities to investigate and rectify the harm done to Plaintiffs, Vice Dean of Student Affairs Knight has failed, in the nearly four months since she was first notified of the denial of Plaintiff's application for recognition, to take any action to protect Plaintiffs' constitutional rights.

115.    As a direct and proximate result of Defendants' policies, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional rights to free expression and association.

116.    As a direct and proximate result of Defendants' actions as described above, Plaintiffs were deprived of their constitutional rights. As a legal consequence of Defendants' violation of Plaintiffs' First Amendment rights Plaintiffs are entitled to damages and the reasonable costs of this lawsuit, including reasonable attorneys' fees. Plaintiffs are seeking monetary damages against Defendants Waldholtz, Hucles, Jafri, Scott, Fraim, Goodwyn, Martin, Lindsay, Morris, Purcell and Knight in their individual capacities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Si and SNaHP respectfully request that this Court enter judgment against Defendants and issue the following forms of relief:

A.      Declaratory relief against all Defendants declaring that:

1.      the provision contained in Section 5, Subsection D, of the SGA Constitution is unconstitutional on its face under the First and Fourteenth Amendments to the Constitution of the United States.

2.      denial of SNaHP's recognition based on viewpoint discrimination is unconstitutional; and

3.      Defendants violated Si and SNaHP's First Amendment rights to free speech and association.

B.      Injunctive relief mandating that all Defendants immediately take any steps necessary to officially recognize SNaHP as a student club at EVMS.

C.      An award of monetary damages against individual-capacity Defendants in an amount to be determined by the Court to compensate Plaintiffs for Defendants' interference with Plaintiffs' rights under the U.S. Constitution;

D.      An award of nominal damages against Defendants for violating Plaintiffs' rights under the U.S. Constitution;

E.      An award of punitive damages against Defendants in their individual capacities for their reckless and callous disregard for Plaintiffs' First Amendment rights;

F.      An award of attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law; and

G.      All other further legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

DATED:          August 17, 2021

Respectfully submitted,

/s/ *Patrick J. Curran, Jr.*
PATRICK J. CURRAN, JR.
VA Bar No. 86144
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
(202) 973-4277
patcurran@dwt.com

JEFFREY D. ZEMAN*
PA Bar No. 328570; MI Bar No. P76610
GREG H. GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622015
* Motions for Admission *Pro Hac Vice* forthcoming
FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
(215) 717-3473
jeff.zeman@thefire.org
greg.greubel@thefire.org

*Counsel for Plaintiffs Edward Si and SNaHP at EVMS*